## W. R. PECK *v.* E. M. BEMISS, et al.

To maintain a petitory action against the defendant, who is not a mere trespasser, but holds under deeds on their face, translative of property, the plaintiff must make out a better title as owner.

Plaintiff claims the land in controversy, under an instrument in these words : "Be it known and remembered, that on this, the 23d day of September, 1847, that I, *Don F. Sims*, agent of *John H Overton*, of Opelousas parish, have this day agreed to sell, as agent aforesaid, to *William R. Peck*, the following described tract of land, [the land is here described] on the following terms [which are stated in the instrument.] Done and signed in the presence of WM. AMONETT. D F. SIMS, Agent. I hereby accept the foregoing sale and am ready to comply on my part as soon as possession is given. "WILLIAM R. PECK."

At the time, and for many months previous, to the knowledge of *Peck*, the defendant was in possession and engaged in preparing the land for cultivation."

In construing this instrument the court *held :* This is a promise of sale which did not make *Peck* the owner of the land. It gave him only the right of becoming so at a future time. It created in his favor an obligation binding upon *Overton*, and by which, if he refused voluntarily to comply, he could be judicially constrained to a specific performance, or subjected, if he had put it out of his own power to comply, to an action of damages. Until a voluntary or forced execution of the promise, the ownership did not pass to *Peck*.

C. C. 2437.

APPEAL from the District Court of the Parish of Madison, *Perkins*, J. *Amonett*, and *Stacy & Sparrow*, and *Bradford*, for plaintiff. *Eustis* and *Roselius*, for defendant. *Hyams*, for the heirs of *Winn*, called in warranty.

SLIDELL, C. J. Our first inquiry in this cause is, as to the character of the action. Its character will be obvious upon a statement of the material aver-

ments of the petition and answer. *Peck*, who brought suit in November, 1848, alleges that he is the owner of a tract of land in the parish of Madison, which he describes. He admits that the defendant is in possession, and prays that he be adjudged the lawful owner, placed in possession, and quieted in his title. The defendant answers that she is the lawful owner of the tract, alleges an open and undisputed possession since October, 1846, and recites her titles as owner.

The action is, therefore, clearly petitory.

To maintain it against the defendant, who is not a mere trespasser, but holds under deeds on their face translative of property, the plaintiff, on whom the burden lies, must, according to principles too well settled to require discussion, make out a better title as owner. Causa idonea ad transferendum *dominium.*

This brings us to a vital question in this cause, which is, whether the title exhibited by the plaintiff is a title translative of ownership? For, if it be not, there is no foundation for this petitory action.

The instrument under which the plaintiff claims is in these words:

STATE OF LOUISIANA, }
Parish of Madison. }

Be it known and remembered that on this, the 23d day of September, 1847, that I, *Don F. Sims*, agent of *John H. Overton*, of Opelousas Parish, have this day agreed to sell, as agent aforesaid, to *William R. Peck*, the following described tract of land, (to-wit,) the north half of fractional section number fifty-seven, containing one hundred and sixty acres, more or less, on the following terms, (to-wit:) At ten dollars per acre; one-third of which is to be paid cash, when possession is given, and the balance in one and two years, at eight per cent. interest after due, with a mortgage on the land sold to secure payments.

DON. F. SIMS, Agent.

Done and signed in the presence of

WM. AMONETT.

I hereby accept the foregoing sale and am ready to comply on my part as soon as possession is given.

WM. R. PECK.

The above lands is the n. ½ of fractional Section No. 57, Township No. 18, of Range No. 13, East.

Upon the same instrument, in a different handwriting, except the signatures, is the following certificate:

STATE OF LOUISIANA, }
Parish of Madison. }

Before me, *Jacob C. Seale*, Recorder in and for said Parish, personally came and appeared, *Don F. Sims* and *William R. Peck*, both residents of the parish of Madison, in the State aforesaid, who acknowledged that they executed and signed the foregoing instrument on the day and date therein written, and for the purposes therein expressed, and that the land conveyed by said instrument is the north half of fractional section No. fifty-seven, in township No. eighteen of range No. thirteen east. In testimony of which, I have said appearors to

sign their names hereto, in presence of *James Crandell* and *Richard N. Graves*, competent witnesses, who sign with said appearers and me, Recorder, after due reading hereof, on this tenth day of April, eighteen hundred forty-eight.

WM. R. PECK,
DON. F. SIMS.

R. W. GRAVES,
J. L. CRANDELL.

J. C. SEALE, Recorder.

STATE OF LOUISIANA, Parish of Madison.

Recorded in Conventional Record Book B, pages 547 and 548; also in Notarial Record Book C, page 66. Witness my signature and official seal, this 10th April, 1848.                        J. C. SEALE, Recorder.

We shall overlook the grave questions which concern the authority of *Sims* to make this contract, the authority of another agent, *Wilson*, to approve it, or its tacit approval by *Overton*. Assuming the authority for the purposes of the only discussion which we deem material, we limit ourselves to the consideration of the meaning and legal effect of this instrument.

In the search for the intention of the parties, we are to look to the whole language of the instrument, and the surrounding circumstances to which the instrument itself points. The plaintiff treated with *Sims* as an agent. The letters of instruction from *Overton* to *Sims*, then in his possession, construed in their most liberal sense possible, did not clothe him with authority to sign deeds of sale. The instrument, on its face, implies an inability then to give possession of the land, and at the time, and for many months previous, to the knowledge and before the eyes of *Peck*, Mrs. *Bemiss* was in possession and engaged in preparing it for cultivation and erecting a building, which stands partly upon it. Construing the language of the deed, with the aid of these surrounding circumstances to which the deed itself, by implication, points, our minds are brought to the conclusions, that the instrument is a promise of sale, a reciprocal promise, by which *Sims*, for *Overton*, engaged himself to sell the land to *Peck* at a future time, and *Peck* engaged himself to purchase it when possession should be given, on the terms of cash and credit designated in the instrument.

It remains to inquire what is the legal effect of such a contract with respect to the transmission of ownership. The contract, to this day, has never been executed, although a suit has been brought by *Peck* against *Overton*, to enforce a specific performance; and the question is, what rights passed by the instrument itself, assuming the authority of *Sims* to sign it.

This reciprocal promise of sale did not ·make *Peck* the owner of the land. It gave him only the right of becoming so at a future time. It created in his favor an obligation binding upon *Overton*, and by which, if he refused voluntarily to comply, he could be judicially constrained to a specific performance or subjected, if he had put it out of his own power to comply, to an action for damages. Until a voluntary or forced execution of the promise, the ownership did not pass to *Peck*.

It is true that the 2437th Article of our Code declares, that a promise to sell amounts to a sale, when there exists a reciprocal consent of both parties, as to the thing and the price thereof, or as it is said in the French text, La promesse de vendre vaut vente, lorsqu'il y a consentement réciproque des deux parties sur la chose et sur le prix. But that we are not to take these emphatic

expressions *au pied de la lettre*, and recognize no difference between a sale and a promise to sell, is obvious from other provisions of our Code, from the history of the corresponding article of the Napoleon Code from which our own is taken, and from a just appreciation of the nature of things and the suggestions of common sense, applied to the practical dealings of men with each other. The law would be censurable for a strange violation of the principles of reason and justice, and for a shortsighted view of expediency, if it deprived individuals of the right of making prospective agreements for a sale, or told them that if they make each other a reciprocal promise to buy and sell a thing a year hence, for example, that they should be absolutely considered as having made a present sale, with all the incidents of a shifting of the risk, revenues, accretion, &c., which pertain to a contract of sale.

The antecedent history of the jurisprudence of France, from whose Code we have taken this article, and which is luminously considered by Marcadé, is a satisfactory key to the true meaning of the expressions—La promesse de vendre vaut vente. It seems to have been dictated by a desire to put at rest the question which had divided learned minds, whether a promise of sale created such an obligation as entitled the promissee to an action for specific performance, or simply an action for damages. It is in this sense the Code speaks, as we think that author has justly remarked—La promesse de vendre vaut vente, c'est à dire, oblige à passer le contrat.

Being of opinion that the plaintiff has not shown a right to maintain a petitory action, his suit against Mrs. *Bemiss* must fail. The reversal of his judgment against the defendant, carries with it a reversal of the judgment as to the warrantors.

The judgment in favor of the plaintiff against *Overton*, who was cited by Mrs. *Bemiss* as warrantor, is clearly irregular. His exception should have been sustained, and the plaintiff should have awaited the result of the suit against *Overton* for specific performance then pending. That this present suit should not have been brought at all until a voluntary or forced performance by *Overton*, follows from what has been already said in the consideration of the plaintiff's title.

It is therefore decreed, that the judgment of the District Court be reversed; that there be judgment against the plaintiff and in favor of Mrs. *Bemiss*, the defendant, and that the costs in both courts be paid by the plaintiff. And it is further decreed, that the right of said plaintiff against said *John H. Overton*, if any he has, be reserved, this decree being made without prejudice thereto.