On Application for Rehearing.
PROVOSTY, J.
The question being whether the land in dispute fell within the community of acqugts and gains between Wad-kins and his now deceased wife, as heir of whom the plaintiff minor claims ownership of one-half of the property, the facts are-that Wadkins settled upon the land with a view to acquiring it under the homestead laws of the United States in 1893, one year *319 before his said marriage, which took place in 1894; that his application for entry was filed in 1895, during the existence of Ms marriage; that hi£ wife died in 1896; that he made his final proofs and obtained his patent in 1898, and thereafter sold the land to the authors in title of the defend■ant company.
The court has not held, as counsel erroneously suppose, that property acquired under the United States homestead law, during the community of acquits and gains, does not fall into the community. The contrary was expressly decided in the eases, among others, of Brown v. Pry, 52 La. Ann. 58, 26 South. 748, and Simien v. Perrodin, 35 La. Ann. 931; and the point has been considered by both bench and bar as being so fully settled that in the recent closely contested cases of Richard v. Moore, 110 La. 435, 34 South. 593, and Crochet v. McCamant, 116 La. 1, 40 South. 474, 114 Am. St. Rep. 538, no one thought of contesting it, but considered that the sole debatable question was as to the point of time when the title.should be considered as having vested. Indeed, in the latter case the decision was that the property had fallen into the community; and in the former case the court expressly stated that if the patent had issued during the husband’s life the property would of necessity have fallen into the community. And we do not find that the legal situation in such a case is anywhere better expressed than in the following pas•sage in plaintiff’s learned counsel’s brief:
“The homestead laws of the United States .are to be construed with, and not in opposition to, the community laws of the state. In case of any conflict between the two, then, of •course, the federal law must prevail. But, in the absence of anything in the federal statutes to deny the application of the state laws, then the state laws must be considered as written into the federal statutes, and as a part of them. To deny this proposition would be to assert an intention on the part of Congress to iegislate upon local matters of land title, and -.to abolish the system of community property as to all lands acquired under the provisions of the homestead statutes.”
But what the court has held is that the investiture of the title dates from the settlement upon the land, and not, as contended by plaintiff, from the filing of the application for entry. And this, as an effect of the act of Congress of 1880 (Act May 14, 1880, c. 89, 21 Stat. 141 [U. S. Comp. St. 1901, p. 1393]), and of our codal provisions touching the retroactive operation of the accomplishment of suspensive conditions. This retroactivity of the accomplishment of the suspensive condition is expounded in the case of Crochet v. McCamant, supra, and is relied upon by plaintiff in the present case.
In the McCamant Case, by the way, the attention of this court was not called to the said act of Congress of 1880; and, besides, the operation of said act would not have made any difference in the case, as the settlement and the filing of the application for entry had both taken place during the marriage.
Said act of 1880, referring to the homesteader, says:
“His right shall relate back to the date of settlement, the same as if he settled under the pre-emption laws.”
Plaintiff’s learned counsel lay much stress upon the qualification, “the same as if he settled under the pre-emption laws,” insisting that by said act of 1880 the nature of the right acquired by the homesteader by mere settlement was not changed, but continued the same as theretofore, and that, as theretofore, he did not become vested with any interest in the land until the filing of Ms application for entry, and we must admit that we are much impressed by the argument of the learned counsel on that point; but the Supreme Court of the United States has expressed the contrary opinion on two different occasions. True only arguendo; but our great respect for that *321 high tribunal leads us to accept those expressions as conclusive, bearing, as they do, upon the interpretation of a federal statute.
In Maddox v. Durnham, 156 U. S. 546, 15 Sup. Ct. 448, 39 L. Ed. 527, between the date of settlement upon the land by the homesteader and the date of his offering to file his application for entry, the lands were withdrawn from entry. They were subsequently granted to the state of Kansas, and by that state were granted to the Missouri, Kansas & Texas Railroad Co., and by that company sold to the plaintiff, who was suing to recover them from the homesteader. The court said:
“This claim of the defendant cannot be sustained. At the time of those transactions, the mere occupation of the land, with a purpose at some subsequent time of entering it for a homestead, gave to the party so entering it no rights. The law in force ([Act May 20, 1862, c. 75] 12 Stat. at L. 392) made the entry at the law office the initial fact. * * * So the law stood until May 14, 1880 (21 Stat. at L. 141), when an act was passed, the third section of which is as follows: ‘ * * * ’ By this section for the first time the right of a party entering land under the homestead law was made to relate back to the time of his settlement.”
By inference the court here holds that, if the defendant’s settlement had been made subsequently to, instead of prior to, the adoption of the said act of 1880, the withdrawal of the land from entry would have been ineffective as against the rights acquired by the homesteader by his settlement.
The ease of Railway v. Donohue, 210 U. S. 23, 28 Sup. Ct. 600, 52 L. Ed. 941, in its facts is even less closely analogous than that of' Maddox v. Burnham; but the expressions of the court, the present Chief Justice being the organ of the court, are even stronger. Thus, at page 30 of 210 U. S., at page 602 of 28 Sup. Ct. (52 L. Ed. 941), the court said:
“It was not until May 14, 18S0 (c. 89, 21 Stat. 141), that a homestead entry was permitted to be made upon unsurveyed public land. The statute which operated this important change, moreover, modified the homestead law in an important particular. Thus, for the first time, both as to the surveyed and unsurveyed lands, the right of the homestead settler was allowed to be initiated by and to arise from the act of settlement, and not from the record of the claim made in the land office.”
Again:
“It is certain, however, that, viewing comprehensively the rulings pf the Land Department, the subject has been considered in two aspects: First, the sufficiency of acts done by a settler upon or after initiating a claim to give notice to the extent of his claim to another settler; and, second, the sufficiency of like acts to entitle to a patent for the land as against the government. In both classes, it is undoubted that the administrative rule has been, as to surveyed and unsurveyed lands, that the notice effected solely by improvements upon the land is confined to land within the particular quarter section upon which the improvements are situated. [L. R. Hall] 5 L. D. 141. And this ruling was predicated upon the assumed import of the decision in Quinby v. Conlan, 104 U. S. 420 [26 L. Ed. 800].
“As to the second aspect — that is, the nature and character of the acts of the settler essential to initiate and preserve a claim to land as against the government — the rulings of the Land Department have been liberal towards the settler, and his good faith and honest purpose to comply with the demands of the statute have primarily been considered, thus carrying out the injunction of this court in Tarpey v. Madsen, 178 U. S. 220, 20 Sup. Ct. 849, 44 L. Ed. 1042, and cases there cited, to the effect that regard should be had, in passing on the rights of the settlers, to the fact that ‘the law deals tenderly with one who, in good faith, goes upon the public lands with the view of making a home thereon.’ ”
Rehearing refused.
BREAUX, C. J.,
adhering to the first opinion, hands down the following:
All the decrees of this court on the subject-matter involved are in harmony. The texts of one of the decisions (possibly two) are broader than necessary. See Crochet v. McCamant, 116 La. 1, 40 South. 474, 114 Am. St. Rep. 538. See, also, upon the subject, note to 7 L. R. A. (N. S.) 967, 968.
We held in our decision heretofore handed down that between the government and the homesteader community rights cannot interfere with the general government. As re *323 lates to the government, it falls into the community after it has been acquired, not before.
I adhere to the first opinion, and agree with the court’s action in refusing the rehearing.