Statement of the Case.
MONROE, C. J.
Plaintiff has appealed from a judgment rejecting her demand for damages alleged to have been sustained by reason- of the failure of defendant to carry into execution a certain alleged contract, based upon the following correspondence, to wit:
“New Orleans, La., July 28, 1915.
“To Gurley & Parkerson, Real Estate Agents —Dear Sirs: I. make this offer of $4,900.00 for the following property, known as the ‘Alfred E. Page Place,’ at Bay St. Louis, Miss., located on beach next the O’Brien property and having a frontage of 23 feet by a depth of 833 ft. on one line, coming to a point in rear, more or less, together with all improvements thereon and all furniture and furnishings now in dwelling and other buildings thereon belonging to the said Alfred E. Page. Possession to be given October 31st, 1915, if act of sale has been passed.
“Terms: Purchaser to assume mortgage of $2,200.00, and purchase insurance policy at prorate. Taxes for year 1915 to be prorated. Total equity in Bay St. Louis property $2,-700.00.
“Provided, the vendor, Mr. Alfred E. Page, purchase the following properties in New Orleans, La.: Nos. 4916-4918 Howard St., lot 30x150 ft., together with all improvements thereon; Nos. 2116¡-2118 Valmont St., lot 30x123 ft., together with all improvements thereon; Nos. 2120-2122, Valmont St., lot 30x123 ft., together with all improvements thereon; all more or less. Rents to belong to the said Alfred E. Page from moment act of sale is signed.
“Price: 4916-18 Howard St., $3,250.00-mortgage $2,000.00. 2116-18 Valmont St., $2,000.00 — mortgage $2,800.00. 2120-22 Val-mont St., $2,250.00 — mortgage.
“The mortgage indebtedness to be assumed by the said Alfred Et Page, and he to purchase the insurance policies at pro rata rates.
“Taxes for the year 1915 to be prorated. Acts of sale to be passed by Felix J. Dreyfous, Esq. Total equity in New Orleans property $2,700.00, all to be subject to consent of holder, or holders, of mortgage notes. Vendor in all cases to furnish all necessary certificates. The total valuation of the New Orleans property being $7,500.00, it is understood and agreed that my agents, Messrs. Gurley & Parkerson, receive a brokerage of 3 per cent., of which I promise to pay $125.00, cash, at time act of sale is signed; Mr. Alfred E. Page to pay balance, as agreed below.
“[Signed] J. Loeffler.”
“New Orleans, La., July 28, 1915.
“Acceptance of the above is hereby authorized, and I agree to pay my agents, Gurley & Parkerson, a brokerage of $100.00, balance due on the New Orleans property, and, in addition, a brokerage of 3 per cent, on the total valuation of my Bay St. Louis property, $4,900.00; making a total brokerage due them by me of $247.00.
“To authorize my wife to sign.
“[Signed] Alfred E. Page.
“Eda R. Page.”
The petition alleges that defendant is indebted to Mrs. Eda R. Page in the sum of $5,693.60, for this, to wit, that she entered into the above-quoted contract with him; that, under the terms thereof, Alfred E. Page (acting as the agent of his wife) agreed to purchase the city property therein described upon the terms.set forth; that petitioner immediately employed attorneys to examine the titles, and was advised that, according to the-records, the title to said property was vested in the Cosmos Realty Company; that she was-ready to comply with her agreement, but that, notwithstanding her efforts to have-him do so, defendant, assigning various pretexts, failed to comply, on his part, and on November 2 notified her that “The Cosmos Realty Company, owners of the property on *893 Howard and Valmont streets,” liad advised him that it was unable, at present, to finance any proposition; that, though defendant is president of said company, he signed the agreement in his individual capacity, and, though petitioner has been informed that the company would ratify his action and. execute the agreement, she has also been informed that it has taken no steps toward the execution of said agreement, a copy of which is annexed to and made part of the petition; and that petitioner is therefore unable to maintain an action for specific performance against said company; that, ■ on account of the failure of defendant to comply with his said agreement, she has suffered material damage, to wit, her property at Bay St. Louis was on the market and would have been sold but for said agreement; that, in the meanwhile, on September 29, 1915, a storm swept that section and destroyed the equity'of $2,700 that she had in the property; that she has been, and will be, compelled to pay a commission to Gurley & Parkerson; that she has lost the equity, amounting to $2,700, in the New ■ Orleans property; and that she is also entitled to punitive damages.
Defendant filed' exceptions of vagueness and no cause of action, the first of which was overruled and the second referred to the merits. He then answered, ’ admitting the agreement, as set forth in the instrument made part of the petition, and admitting certain allegations of the petition, but specifically denying that plaintiff was ready and willing to. comply, or that he (defendant) has failed to comply, with the obligations imposed by said agreement; further denying that plaintiff was informed that the Cosmos Bealty Company would ratify any agreement with respect to the Page property; and alleging that when, after considerable delay, the proper evidence of plaintiff’s title to the Bay St. Louis property was furnished, the storm of September 29, 1915, had so damaged said property as that plaintiff was not in a position to comply with her agreement; that the mortgage resting upon the city property was not released; and that • the consent thereto of the holders of the notes was not obtained.
When the case was called for trial and plaintiff began her offer of evidence, defendant, through counsel, objected to any and all evidence in support of her demand, on the grounds:'
“(1) That this suit is brought in the name of Mrs. Page; that it is not an action for personal injuries and should be brought in the name of her husband, and,- further, no cause or right of action is shown- in the petition; (2) * * * that in the agreement set forth is the following clause: ‘All to be subject to the consent of the holder or holders of the mortgage notes,’ and there is no allegation in the petition to the effect that consent was obtained; and (3) there is no allegation that, prior to the storm of September 29th, the defendant was ever put in default or had refused to take title and, yet, on the face of plaintiff’s petition, stating that, after the storm of September 29th, the Bay St. Louis property, which the plaintiff had agreed to transfer to defendant, was damaged to the extent of the sum of $2,700.00. It is, therefore, shown on the face of plaintiff’s petition that plaintiff was not in a position to transfer the property to defendant, in pursuance of the agreement which he is now suing on.”
The court ruled that the objections should be reserved, to be considered upon the argument and after the submission of the case; and it was agreed that they should be considered as made to all testimony thereafter to be offered to which they might be applicable, and governed by the same ruling.
The record discloses several letters addressed to defendant, between August 5 and September 22, 1915, inclusive, by Gurley & Parkerson (who were acting as brokers in the matter), in regard to the title to the Bay St. Louis property, and its examination by a Mississippi lawyer, and one or two, so addressed, by the lawyer, in none of which, or *895 ■elsewhere, do we find any suggestion of an inclination on the part of defendant to avoid his agreement or delay its execution. On September 28, Gurley & Parkerson wrote as follows:
“The La. Abstract and Title Co. have received the abstract of title to the Page property, and we will forward the same to Hr. B. O. Bowen, at Gulfport, Miss., in order that he may examine the title, as instructed by you. The writer and Mr. Page saw Mr. Dreyfous- and he says it will be necessary for you and Mr. Page to meet at his office to arrange matters. Kindly telephone this office to make appointment, and oblige
“Yours very truly
“[Signed] Gurley & Parkerson.”
It is shown that the letter was misdirected and returned to the writers, and did not roach defendant until several days after the storm had destroyed the Bay St. Louis property to the extent of about two-thirds of its value. In a letter of October 7, defendant writes to the brokers, in part as follows:
“In answer” (to a letter of October 4 or 6) “I desire to state that the property that you intended to give in exchange for the New Orleans property has been badly damaged by the last storm and is no longer in the condition in which it was at the time the agreement was signed between us. Under the circumstances and inasmuch as the transfers of the property are to be by notarial act, I do not consider that the contract is of binding effect until such acts are signed.”
Other letters were exchanged, but we do not find that they affect the issues here presented.
Opinion.
The exception of no cause of action was not specifically ruled on by the trial judge, and something might, perhaps, be said upon that subject, as, also, concerning the exception of vagueness; hut we find it .unnecessary, in view of our conclusion that the case has been correctly decided on the merits, for which our learned Brother has assigned the following reasons (quoting them in part), to wit:
“It appears that both parties were rather slow in consummating the exchange. In the meantime, the hurricane of September 29 occurred, inflicting damage on the property at Bay St. Louis, amounting to * * * more than half the value of the property. The defendant was afterwards placed in default, by demand only, and he refused to comply with the agreement for the reason that the property of plaintiff has been, practically, destroyed. The question, therefore, seems to be, who, in the face of the agreement to sell or exchange, should bear the loss, resulting from an act of Providence, such as that storm inflicted? The agreement, like an agreement to sell, carried the usual provisions looking to an examination of title and the passage of a notarial act conveying title. The fact that defendant was not the owner of the property in question, but was only the president of the company owning the property, does not, it seems to me, affect” (the word “affect” being omitted from the transcript and supplied by the present writer) “the rights of the parties. In all probability, the exchange would have been effected but for the damage caused by the storm.
“The jurisprudence is very clear that a proposal to sell (or exchange) does not convey title under such circumstances, and the defendant had the right to withdraw from it if conditions had changed the relative values before the final act had been consummated. I do not feel that defendant is liable.”
The conclusions thus reached are sustained by the facts disclosed and the law and jurisprudence applicable thereto.
It is no doubt true that a sale is considered perfect, as between the parties thereto, “as soon as there exists an agreement” (to that effect) “for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.” C. C. 2456. But it is equally true that “a sale may be made, purely and simply, or, under a condition, either suspensive or resolutory”: (C. C. 2457); and, in this instance, the agreement between^ the parties was not one of sale, “purely and simply,” but was an agreement that á sale should be made, by means of a notarial act, to be thereafter executed, provided certain conditions, specified or well understood, should be fulfilled, pending .the ful- *897 Ailment of which the title and possession of the property remained in the respective owners.
As far back as 1841, it was said by this court:
“We understand article 2437 [of the Civil Code, now article 2462] to mean that a promise to soil, when the thing to be sold and the price of it are agreed upon, is so far a sale that it gives to either party a right to claim, recta via, the delivery of the thing or payment of the price; but such a promise does not place the thing at the risk of the promisee, nor does it transfer to him the ownership or dominion of it.” McDonald v. Aubert, 17 La. 450, 451.
And that doctrine has been affirmed in Thompson v. Mylne, 6 La. Ann. 80; Peck v. Bemiss, 10 La. Ann. 160; Garrett v. Crooks, 15 La. Ann. 483; Baldwin v. Morey, 41 La. Ann. 1105, 6 South. 796; Girault v. Feucht, 117 La. 276, 41 South. 572; Barber Asphalt Paving Co. v. St. Louis Co., 121 La. 152, 46 South. 193, and other cases.
At the time the Bay St. Louis property was partially destroyed, therefore, both title and possession were vested in plaintiff, or her husband, and, being at the risk of the owner, the loss fell upon the owner, who, not being thereafter able to deliver the property, has no right of action, either to enforce the agreement to buy or for the recovery of damages.
The judgment appealed from is therefore
Affirmed.