McCALEB, Justice.
 

 Plaintiff is the owner of a forty acre tract of land in Richland Parish and one-
 
 *571
 
 half of the minerals thereunder. He is seeking in this action .to be declared the owner of the other one-half of the minerals by reason of the alleged extinguishment of a mineral servitude, affecting said one-half, by non-user for ten years. As an incident, he desires an accounting from the servitude owners, their lessees and assignees, for all minerals extracted from the land as the result of drilling operations, allegedly conducted thereon illegally, after prescription had accrued.
 

 The salient facts of' the case are that, on November 12th 1934, Charles D. and F. Roy Williams, the then owners of the forty acre tract, entered into a contract to sell the land to H. C. White under the following terms and conditions:
 

 “The party of the second part agrees to move on the said premises and have cleared and ready for the plow as much as 15 acres of land and to build one 3 room dwelling thereon before or by November 12-1935 at which time parties of the first part agree to make to party of the second part a good and merchantable title to the said premises and party of the second part agrees to accept title to same and at that time the party of the second part agrees to execute in connection with said purchase his 6 certain promissory notes for the sum of $100.00 each to bear interest at the rate of 8% per annum from maturity until paid, the first of which is to be due and payable on Nov. 12-1936, and ' annually thereafter, the vendors to reserve from said sale an undivided one-half interest in and to the minerals which may underlie said property, and to retain a vendor’s lien on the conveyed premises to secure the payment of said notes; said notes to contain the usual attorney’s fees clause.”
 

 White complied with the conditions of the contract within the stipulated time and on December 12, 1935, the Williamses conveyed the property to him. The deed was by authentic act and transferred title to White in full ownership, the vendors retaining a lien for the payment of the purchase price and also reserving unto themselves one-half of all the minerals and mineral rights in, on or under the land. It was duly recorded in the conveyance and mortgage records of the Parish of Richland on the date of its passage, December 12, 1935. White thereafter, on July 21, 1936, conveyed to Julian Irvine Hulbert, who subsequently, on March 1, 1937, sold the land to plaintiff.
 

 Charles D. Williams, one of the mineral owners, died in 1941. He is survived by his widow and children. F. Roy Williams, the other mineral owner, is also dead. However, prior to his death, he, together with the widow and heirs of Charles D. Williams, executed a mineral lease in favor of R. T. Sellars and J. A. Funston. Certain co-lessor agreements have been made since the original lease and the lessees have assigned various fractional interests to other persons.
 

 
 *573
 
 Sometime between November 8 and December 9, 1945, the lessees of the Williamses went upon the land, conducted explorations and brought in a producing oil well. Immediately, on December 10, 1945, plaintiff brought the present suit for the judicial cancellation of the servitude and for an accounting. The action is directed against the heirs of the Williamses, the lessees and their assignees. Also joined as parties defendant are plaintiff’s immediate vendor, Hulbert, and his vendor, White.
 

 The theory of plaintiff’s case is that the mineral reservation of the Williamses, contained in their deed to White, was extinguished by prescription of ten year non-user after November 12, 1944 (rather than after December 12, 1945, ten years subsequent to the act of sale), because, in view of White’s performance of the condition contained in the agreement of November 12, 1934, the legal title to the land vested in him retrospectively as of the date of that agreement. Alternatively, it is contended by plaintiff that, should the court determine otherwise, then the ten year liberative prescription has nevertheless accrued for it began to run on November 12, 1935 (rather than on December 12, 1935, the date of the deed) as that was the date upon which White was unequivocally entitled to a deed. Again, as a further alternative, plaintiff maintains that the deed of December 12, 1935 should be reformed so as to show the true date intended by the parties, that is, November 12, 1935, which was the last date upon which title to the property should have been passed.
 

 The principal defendants, the Williams-es, their lessees and assignees^ interposed an exception of no right or cause of action and, after it was overruled, filed an answer resisting the demand by denials of the validity of plaintiff’s postulations.
 

 Moreover, R. T. Sellars, the lessee of the Williamses, filed a reconventional demand in which he sought recovery from plaintiff of one-half of the cost of the drilling operations and also made an alternative contention, unnecessary to set forth.
 

 • Subsequent to the joinder of issue, an agreement was made between counsel 'for the main contestants in which all of the facts hereinabove set forth were stipulated. As a result of this stipulation, the only facts left for determination by the court had relation to the exact date upon which drilling operations commenced and also whether plaintiff had become estopped by his conduct from contending that the servitude prescribed prior to December 12, 1945 (ten years following the date of the deed), as defendants, in the meantime, had filed a plea to this effect.
 

 After a full hearing on all of the issues, the District Judge resolved for the defendants and dismissed the suit. In a written opinion, the Judge declared that the agreement of November 12, 1934 was merely a
 
 *575
 
 promise by White to buy and the Williams-es to sell at a future date, after the performance of certain conditions; that the performance of the conditions by White did not have the effect of vesting title to the land in him as of the date of the promise to sell and that, finally, the alternative pleas of plaintiff, not being supported by either the law or the evidence, were not sustainable. It was further decreed that the reconventional demand of defendant, Sellars, was not well founded and it was dismissed.
 

 Plaintiff has appealed from the adverse decision, reurging all of the contentions made below. Defendant, Sellars, argues that his reconventional demand should be maintained but it cannot be considered since he has' neither appealed from the judgment below nor has he answered plaintiff’s appeal.
 

 The initial point for discussion is whether the performance by White of the conditions contained in the agreement of November 12th 1934 had the retrospective effect of vesting ownership of the property in White as of the date of that agreement. Counsel for plaintiff insist that such a retroactive transfer of ownership occurred by reason of the provisions of Article 2041 of the Civil Code which declares that, when the condition of a contract is complied with, it has a retrospective effect to the date that the engagement was contracted. Counsel are joined in their argument by amici curiae, who go even a step farther by asserting that the contract of November 12th 1934 constituted a sale in praesenti.
 

 We do not view the contentions as meritorious. The agreement of November 12, 1934, is nothing more or less than a promise to sell and purchase which did not effect a retrospective transfer of ownership to White by his performance of its conditions. On the contrary, fulfillment of the conditions of the contract vested only in each party a right to enforcement by specific performance under Article 2462 of the Civil Code.
 
 [1]
 

 The proposition advanced by plaintiff has been many times made and we find consistent rejection of it in a long line of authorities. In most of the adjudications, the party stressing the contention (that a promise to sell is a sale) placed much reliance on Article 2462 of the Civil Code which provides that
 
 “A
 
 promise to
 
 *577
 
 sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.” But, in every case where the court has been faced with the question of determining ownership of the thing prior to the passage of title, it has consistently stated that the promise did not effect a transfer of ownership to the promisee. See McDonald v. Aubert, 17 La. 448; Peck v. Bemiss, 10 La.Ann. 160; Knox v. Payne & Harrison, 13 La.Ann. 361; Garrett v. Crooks, 15 La.Ann. 483; Broadwell v. Raines, 34 La.Ann. 677; Thompson v. Duson, 40 La.Ann. 712, 5 So. 58; Baldwin v. Morey, 41 La.Ann. 1105, 6 So. 796; Capo v. Bugdahl, 117 La. 992, 42 So. 478; Page v. Loeffler, 146 La. 890, 84 So. 194, 22 A.L.R. 563; Trichel v. Home Insurance Co., 155 La. 459, 99 So. 403; Campbell v. Richmond Ins. Co. 156 La. 455, 100 So. 679; Pruyn v. Gay, 159 La. 981, 106 So. 536; Succession of Fay, 161 La. 1022, 109 So. 824 and Davis v. McCain, 171 La. 1011, 132 So. 758.
 

 Nearly a hundred years ago, in Peck v. Bemiss, supra, this court was confronted with the proposition that a promise to sell amounts to a sale. There, Chief Justice Slidell declared:
 

 “This reciprocal promise of sale did not make Peck the owner of the land. It gave him only the right of becoming so at a future time. It created in his favor an obligation binding upon Overton, and by which, if he refused voluntarily to comply, he could be judicially constrained to a specific performance or subjected, if he had put it out of his own power to comply, to an action for damages. Until a voluntary or forced execution of the promise, the ownership did not pass to Peck.
 

 “It is true that the 2437th Article (now Article 2462) of our Code declares, that a promise to sell amounts to a sale, when there exists a reciprocal consent of both parties, as to the thing and the price thereof, or as it is said in the French text, La promesse de vendre vaut vente, lorsqu’il y a consentement reciproque des deux parties sur la chose et sur le prix. But that we are not to take these emphatic expressions au pied de la lettre, and recognize no difference between a sale and a promise to sell, is obvious from other provisions of our Code, from the history of the corresponding article of the Napoleon Code from which our own is taken, and from a just-appreciation of the nature of things and the suggestions of common sense, applied to the practical dealings of men with each other. The law would be censurable for a strange violation of the principles of reason and justice, and for a shortsighted view of expediency, if it deprived individuals of the right of making prospective agreements for a sale, or told them that if they make each other a reciprocal promise to buy and sell a thing a year hence, for
 
 *579
 
 example, that they should be absolutely considered as having made a present sale, with all the incidents of a shifting of the risk, revenues, accretion, &c., which pertain to a contract of sale.” (Words in parenthesis ours).
 

 In Trichel v. Home Insurance Co. supra, it was said [155 La. 459, 99 So. 404]:
 

 “Our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only a confirmation of the first, and not indispensable for the transfer of title.”
 

 The agreement of November 12, 1934, falls squarely within the above cited jurisprudence. It is simply a promise to sell, not absolute, but wholly conditional upon White’s performance of certain acts for it to become binding and enforceable. Yet, counsel for plaintiff grasp at the performance of the conditions by White as a ground for attaching greater legal import to the promise of the Williamses and thus convert their conditional promise to sell into a transfer of ownership when, in truth, White’s performance merely changed the promise of the Williamses from conditional to absolute. To illustrate — if the Williamses had bound themselves absolutely to transfer the land a year hence, ownership would not have vested'in White until the execution of the deed. Obviously, then, the Williamses did not confer ownership on White at an earlier date where their promise was conditional and only became absolute when White did certain things.
 

 Article 2041 of the Civil Code, relied upon by counsel, did not have the magic effect of vesting ownership in White retrospectively. That article, which is found in that part of the Code dealing with conditional contracts, declares that, when the condition has been complied with, it has a retrospective effect to the day the engagement was contracted. This merely means that the rights of the obligor, upon compliance, revert to the date of the contract but it offers no foundation for an argument that, in cases involving contracts to sell and purchase immovable property conditioned upon the happening of an event or the doing of certain things, the ownership is transferred retrospectively by the performance of the condition. On the contrary, compliance with the condition only renders the contract executory; makes the reciprocal promises absolute and establishes'the rights and liabilities of the parties as of the date of the agreement.
 

 Nor do the authorities cited by counsel for plaintiff, viz., Crochet v. McCamant, 116 La. 1, 40 So. 474, 114 Am.St.Rep. 538; Barfield v. Saunders, 116 La. 136, 40 So.
 
 *581
 
 593; Lehman v. Rice, 118 La. 975, 43 So. 639, and Schwing Lumber & Shingle Co. Inc. v. Board of Commissioners, 200 La. 1049, 9 So.2d 409, sustain the conclusion contended for — and this, despite certain careless expressions which may be found in those pronouncements.
 

 Crochet v. McCamant, supra, involved the acquisition of land under the Federal homestead law and has admittedly been overruled. Much is said in that case on the subject of imperfect ownership and conditional obligations. Suffice to say that we do not regard some of the views there expressed as controlling here.
 
 [2]
 

 The decision in Lehman v. Rice, supra, was founded on the law of registry and is authority only for the proposition that a promise to sell, when recorded, protects the promisee in his right to specific performance and that a subsequent vendee of the promisor takes the property subject to the rights of the promisee.
 

 In Barfield v. Saunders, supra, the court decreed that the writing was a sale and not a promise to sell.
 

 In the Schwing Lumber Co. case, it was found that the plaintiffs had acquired ownership by a deed translative of property long prior to the enactment of the Constitution of 1921, which defendant Board contended prevented the vesting in plaintiff of title to the minerals. Hence, the dicta contained therein respecting the effect to be given promises to sell was without bearing on the question involved.
 

 The next proposition advanced by plaintiff is that, even though White did not acquire ownership of the land on November 12, 1934, he became owner on November 12, 1935, which is the date provided in the promise of sale for the execution of the deed, as he had fully performed the conditions of the contract at that time. From this premise, it is argued that, since White was entitled to a deed from the Williamses on November 12, 1935, the liberative prescription began to run on that date, even though the deed was not passed until December 12th. In support of this proposition, counsel rely upon Article 2462 of the Civil Code (quoted above) and Article 2040, which provides that “The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.”
 

 The point is not tenable. Whatever may have been the right of White to demand that the Williamses transfer ownership on or before November 12, 1935, the fact is that the deed was admittedly not executed until December 12, 1935, and the
 
 *583
 
 servitude was created on that day. Prescription could not commence to run until the servitude came into existence. Plaintiff, when he purchased from Hulbert, was charged with notice that the land was subject to the servitude in favor of the Williamses, which was created by the deed of December 12, 1935.
 

 The next alternative proposition of plaintiff is that the deed should be reformed so as to redate it as of November 12, 1935, which was the time intended by the parties for the transfer of ownership to the property as shown by the promise to sell.
 

 We find no substance whatever in this contention for the simple reason that there is no error in the date of the deed. The equitable remedy of reformation lies only to correct mistakes or errors contained in written instruments where such instruments, as written, do not express the true contract between the parties. See 45 American Jurisprudence, Verbo “Reformation of Instruments,” Sections 45 et seq. Thus, if it were here alleged that the deed was actually passed on November 12, 1935, and that it was dated December 12th, through mutual error or mistake, a vastly different question would be presented. But that is not this case, as plaintiff does not contend that the deed was not actually passed before the Deputy Clerk of Court on December 12, 1935. Despite this, he would have the deed dated on November 12, 1935, even though it be untrue that the instrument was executed on that date.
 

 Finally, plaintiff and amici curiae have expressed great concern respecting the result in this case. Amici curiae say that, unless the decision of the lower court is reversed, it will “‘adversely affect vested rights and afford a way to retain mineral servitudes for indefinite periods, and thereby do away with the 10-year prescriptive period applicable to such servitudes.” . They conceive and portray situations wherein owners of land desiring to sell and yet reserve minerals for a longer period than ten years would execute promises to sell, withholding ownership in themselves for many years and thereby circumvent the law extinguishing the ownership of mineral servitudes after ten years where there is no exploration by the servitude owner.
 

 Our answer to the alarms of counsel is that it will be time enough to deal with situations involving fraudulent evasions of our laws and public policy when and if occasion arises. Surely, no one will have the temerity to suggest unlawful scheming on the part of the defendants in the present case. Conversely, here it appears that the shoe might be on the other foot as it takes no more than a reading of the record to convince us that it is plaintiff’s good faith and sincerity brought under scrutiny— for the evidence shows that he considered and believed that the servitude owned by the Williamses would not prescribe until after December 12th 1945 and that he sought to induce the Williamses’ lessee not to explore on the land until after that date,
 
 *585
 
 offering the driller to make it worth his while. Failing in those efforts, he has reversed his .position and contends that, as a matter of law, the servitude prescribed prior to the date contained in the deed to White.
 

 The judgment appealed from is affirmed.
 

 O’NIELL, C. J., absent.
 

 [1]
 

 Amici Curiae cite and depend upon Article 2456 of the Civil Code which declares that the sale is considered perfect between the parties as soon as there exists an agreement for the object and for the price thereof although the object has not yet been delivered nor the price paid. That article has application only in cases where the parties, by their contract, do not contemplate a withholding of title until a later date. It is absolutely without pertinence here as an examination of the agreement between White and the Williamses discloses that the former would not acquire ownership until after he performed the conditions which would entitle him to receive from the latter a good and merchantable title to the land.
 

 [2]
 

 Were it absolutely necessary, the Crochet case could be distinguished from this one on the ground that, there, the court regarded the condition to be resolutory whereas, here, the condition in the contract is obviously suspensive. For the effect of the resolutory condition see Article 2045 of the Civil Code.