In re Merkel Lenoyt SMITH (S.S. # 425–52–3497) Evelyn Joyce Nelson Smith (S.S. # 434–44–7487), Debtors.

Merkel Lenoyt SMITH, Evelyn Joyce Nelson Smith, Plaintiffs,

v.

Daniel H. BALL and Guaranty Bank and Trust Company, Defendants.

Adv. No. 86–0211.
Related Case No. 86–00842.

United States Bankruptcy Court,
M.D. Louisiana.

March 13, 1987.

Jack Patrick Harris, Baton Rouge, for plaintiffs.

Jeffrey P. LeBlanc, Baton Rouge, for Daniel H. Ball.

Dale R. Baringer, Baton Rouge, for Guaranty Bank.

## REASONS FOR DECISION

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising in a case under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 156(b)(2)(A); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

In the pleadings all parties have expressly stated that this is a core proceeding. No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

### II. Facts

This is a decision on cross-motions for summary judgment filed by the Debtors and Daniel H. Ball ("Defendant"). The parties have stipulated the facts for purposes of these cross-motions for summary judgment.

On January 28, 1985, the Debtors entered into a lease with the Defendant for certain residential real (immovable) property ("the Property"). The lease provides for rent in the amount of $400.00 per month for sixty months beginning February 1, 1985, and ending January 31, 1990. The Defendant/Lessee agreed to "... pay all insurance on the property. The Lessee shall keep the property insured against loss by fire, extended coverage, vandalism in the minimum amount of $72,000 with a loss payable clause in favor of Lessor. A copy of insurance policy to be furnished Lessor." The lease also provides that "Lessee agrees to buy and Lessor agrees to sell the above described property ..." for the sum of $72,000 payable in cash on or before February 1, 1990. The lease further provides: "The property shall be purchased in its 'as is' condition."

On June 13, 1986, the Debtors filed their bankruptcy petition.

On July 29, 1986, the Debtors and the Defendant entered into a purchase agreement for the purchase of the property. The purchase agreement refers to the lease and changes the lease purchase agreement in three particulars: First, the act of sale is to be passed sooner than February 1, 1990; second, the $72,000 purchase price is to be paid in installments over twenty-five years at 10% interest; third, the sale is subject to bankruptcy court approval.

Pursuant to the lease and purchase agreement, the Defendant obtained property and casualty insurance on the property and named himself and the Debtors as loss payees.

On August 30, 1986, the building on the property burned. On September 9, 1986,

the insurance company issued a check payable jointly to the Debtors and to the Defendant in the amount of $96,000; the check has been deposited into a trust account of the attorneys for the Defendant pending this judicial determination of the rights of the parties.

The parties have filed cross-motions for summary judgment on the issue of whether the Debtors will be required to fulfill their obligations under the purchase agreement or whether that agreement is terminated.[1]

### III. Legal Analysis

The Debtors filed this complaint seeking the insurance proceeds of $96,000 and asking that the purchase agreement and lease be declared null. The Defendant answered stating that it is ready to perform the purchase agreement as called for; *i.e.,* the Defendant seeks to pay the Debtors $72,000 in cash (from the fire insurance proceeds) and to require the Debtors to convey title to the property to the Defendant. The Defendant is not seeking any reduction in purchase price as a result of the fire.

The issue for decision is whether, if the sale is authorized by the Court, the Debtors will be required to perform under the purchase agreement; the issue of entitlement to the sale proceeds, whether the mortgager holds a lien on those sale proceeds, and the issue of entitlement to the insurance proceeds in excess of the $72,000 payoff have not been postured for decision by summary judgment and are reserved.

The Debtors assert four grounds on which they should not be required to perform under the contract: (i) impossibility of performance; (ii) novation or modification resulting in a conditional obligation and a loss occurring before the condition was satisfied; (iii) avoiding powers of § 544; and

(iv) rejection of executory contracts under § 365.

### A. Impossibility of Performance

■ The Debtors' first contention is that Louisiana Civil Code Article 1873 provides that an obligor is not liable for his failure to perform when that failure is caused by a fortuitous event that makes performance impossible. The Debtors are clearly correct in that statement of the law. However, the Debtors' conclusion from that assertion is not correct. While the obligor may "not be liable for his failure to perform" that does not mean that he may not be required to perform; liability for nonperformance and enforceability of partial performance are different concepts; the latter is the issue here, not the former. Article 1877 specifically governs the issue to be decided. That article provides:

"When a fortuitous event has made a party's performance impossible in part, the court may reduce the other party's counterperformance proportionately, or, according to the circumstances may declare the contract dissolved."

It is clear that the purchase agreement and the lease required the transfer of land together with the buildings and improvements thereon. As pointed out in the memorandum filed by Defendant's counsel, it is still quite possible to transfer the land; what is impossible is to transfer the land and building undamaged by fire. Thus, performance by the Debtors is not impossible; performance is merely "impossible in part" and Article 1877 governs that situation.

The comment to Article 1877 explains its purpose:

1. Counsel for the Debtor has filed two memoranda in connection with these motions. Both, but particularly the second, concentrate more on who is to bear the "risk of loss" and who is entitled to the cash insurance proceeds. The motions, however, clearly ask for partial summary judgment "... on the question of whether the debtor should be required to transfer the property to Dan H. Ball ...", pleading # 13, Debtor's motion for partial summary judgment. The Defendant's motion for partial summary judgment likewise states: "... that judgment

should be rendered ... ordering [Debtors] to transfer the subject property to Daniel H. Ball pursuant to the Purchase Agreement entered into by the parties ..." pleading # 16. While a determination of the enforceability of the obligation to sell necessarily determines (at least in part) entitlement to insurance proceeds, there is another party, Guaranty Bank, not made a party to these cross-motions and consequently, I will not attempt to adjudicate entitlement to the funds.

"This article is new. It changes the law to the extent that it allows the court to uphold a contract while reducing the amount for which the parties are bound. Under this article, the court may uphold the contract if the partial performance by one party will still be of value to the other after a proportional reduction of the latter's counterperformance. The court may declare the contract *dissolved if partial performance* by one party would be of *no value to the other.* This article deals with a situation not contemplated in the Civil Code of 1870. It might be said that, upon such facts, the basic rule of dissolution should prevail and the contract should be dissolved, but dissolution would allow the obligee to take unfair advantage when a partial performance would still be to his benefit but he prefers dissolution for other reasons.... This article gives the court the option of choosing either according to the circumstances of the individual case." [Emphasis supplied.]

This Article clearly contemplates exactly the situation for decision in this proceeding. It is still possible for the Debtors to transfer the land; Article 1877 authorizes the Court to recognize and to enforce the contract while reducing the counterperformance; *a fortiori* the contract may be enforced when no reduction in counterperformance is requested as in the present circumstances where the obligee is offering full, not diminished, counterperformance. Consequently, I find that the contract is not dissolved for impossibility.

### B. Novation and Suspensive Conditions

The Debtors' second argument is that there has been a novation of the contract by the purchase agreement entered into post-petition, that the new contract is not enforceable because a loss occurred prior to satisfaction of the suspensive condition,

and that therefore the contract is null. The Debtors cite Louisiana Civil Code Article 2471: "If the thing be destroyed before [the contingency is fulfilled] the loss is sustained by the seller."

The Debtors' argument is unsound for two reasons. First, the statement of the sale being contingent on Court approval was not the creation of a contingency between the parties but was a recognition of § 363 of the Bankruptcy Code that provides that a sale outside the ordinary course of business must be approved by the court. If the Debtors' argument were sound, then all sales outside the ordinary course of business would be avoidable since all sales, upon the filing of the bankruptcy petition, become subject to the suspensive condition of § 363 whether or not a new contract is signed.

Second, the Debtors' argument is not sound because the Debtors neglect to notice the third paragraph of Article 2471 of the Louisiana Civil Code. That paragraph provides: "If the thing be only deteriorated, when the condition is accomplished the buyer has the choice to take it in the state in which it is, or to dissolve the contract." As noted above, the agreement to sell relates to land and improvements. The land itself is not deteriorated; the improvements were destroyed and thus the asset is deteriorated. Therefore the purchaser has the choice of taking the property or rejecting the contract. The purchaser has made his choice and agrees to purchase for the full price.

Again, the Debtors misunderstand the issue when they concentrate on risk of loss; the issue is enforceability of the contract to sell.[2] Therefore, the Debtors' second argument cannot be accepted.[3]

### C. 11 U.S.C. § 544 and Avoidance of Transfers

Third, the Debtors argue that they can use the avoiding powers of § 544 of the

---

**2.** For that reason, *Jefferson Parish School Board v. Rowley Co., Inc.,* 350 So.2d 187 (La.App., 4th Cir., 1977) cited in Debtor's rebuttal memorandum is not apposite.

**3.** This rejection of the Debtors' second argument assumes that there was a novation, *i.e.,* accepts

the interpretation of the documents most favorable to the party against whom the issue is decided. Judging from the documentation, the contract merely carried out the lease. If the lease governs, the only "contingency" is a recognition of the statutory contingency of § 363.

Bankruptcy Code to avoid the contract. Section 544 of the Bankruptcy Code allows a trustee (and a debtor-in-possession) to avoid a transfer of property of the debtor or an obligation of the debtor if the transfer or obligation could be avoided by a creditor. In essence, the Debtors' argument is that the Louisiana public records doctrine makes transfers avoidable by persons not party to them if the transfer involves real estate and if the transfer is not recorded.

■ The Debtors' third argument fails for two reasons. First, the lease is not a transfer. A Louisiana lease is a contract governed by the general rules relative to conventional obligations under which each party has obligations to perform.[4] The Bankruptcy Code defines a transfer as "... disposing of or parting with property or with an interest in property ..."[5] The Debtors, in the lease, did not part with property but merely undertook an obligation to perform the duties required of a lessor under a conventional obligation of lease and under an obligation to sell.[6]

■ The second reason that the Debtors' reference to § 544 is misplaced is that § 544 is a broad provision applicable to transfers and obligations in general and is superseded with respect to the specific contract in question by § 365(i). Although § 544(a)(3) allows the avoidance of "obligations" as well as the avoidance of transfers, the term "obligation" is not defined in the Bankruptcy Code. At least one court concludes that a purchase agreement is an executory contract governed by the directly applicable provisions of § 365(i) rather than the general concepts of § 544(a)(3): "... it is highly unlikely [that] Congress would enact section 365(i) while at the same time allowing the trustee to avoid, under Section 544(a)(3), the equitable interests of buyers in possession."[7]

### D. 11 U.S.C. § 365 and Rejection of Executory Contracts

■ The Debtors' fourth argument is that the contract of lease and the contract to sell real estate are executory contracts that the Debtors may reject under § 365 of the Bankruptcy Code. I agree with this analysis. However, the Debtors have neglected to refer to the sub-section of § 365 that is directly applicable to the situation at issue. That section, edited to exclude irrelevant material, reads as follows:

"If the trustee rejects an executory contract of the debtor for the sale of real property ... under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property ...

"If such purchaser remains in possession ... such purchaser shall continue to make all payments due under the contract ... and the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract."

While the legislative history indicates that this statute was designed for installment sales contracts, it applies to any contract for the sale of real estate when the non-debtor purchaser is in possession.[8]

In short, the Bankruptcy Code specifically contemplates the issue to be decided in this proceeding and rules squarely that the debtor may not reject an executory contract of real property if the obligee is in possession and is willing to make the re-

4. Louisiana Civil Code Article 2668 and Articles 1906, *et seq.*

5. 11 U.S.C. § 101(48).

6. If the sale had been closed, but not recorded, there might have been a transfer that could be avoided: *In re Anderson,* 30 B.R. 995, 1011 (D.C. M.D.Tenn., 1983). The court in *dicta* in that case concludes that the purchase agreement would have been an executory contract and governed by § 365(i).

7. *McCannon v. Marston,* 679 F.2d 13, 17 (3d Cir., 1982).

8. *McCannon v. Marston,* 679 F.2d 13 (3d Cir., 1982).

maining payments under the contract; in that event, the debtor must convey title.[9]

## IV. Conclusion

For reasons assigned, summary judgment is granted in favor of the Defendant and against the Debtors, and the Debtors will be required to perform under the executory contract to sell real estate for the sum of $72,000, if the sale is noticed and authorized by the bankruptcy court. This opinion does not obviate the need for notice of the proposed sale under Rule 2002 and court authority to sell under § 363.

The Defendant will supply an order to this effect on March 19, 1987, at 2:00 p.m. at the scheduling conference in this matter.

Counsel will be prepared at that scheduling conference to discuss a method and schedule for resolution of the remaining issues in this case.

---

**9.** The statutory purpose of § 365(i) is served by this analysis. See the legislative history discussed in *In re Summit Land,* 13 B.R. 310, 7 BCD 1361 (Bkrtcy., D. Utah, 1981).