In re James Craig POGUE and Maureen Susan Pogue, Debtors.

In re Leonard RUBLE and Shelly Ruble, Movants.

In re James Craig POGUE and Maureen Susan Pogue, Respondents.

Bankruptcy No. 90–00276–DPM13.

United States Bankruptcy Court, E.D. Missouri, E.D.

Dec. 19, 1990.

Order on Motion to Offset
July 31, 1991.

Ann F. Snitzer, St. Ann, Mo., for debtors.

Michael C. Todt, Clayton, Mo., for movants.

John V. LaBarge, Jr., St. Louis, Mo., trustee.

James S. Cole, Asst. U.S. Trustee, St. Louis, Mo.

## MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(G), which the Court may hear and determine.

### INTRODUCTION

The Debtors, James and Maureen Pogue filed this Chapter 13 case on January 23, 1990. The Movants, Leonard and Shelly Ruble, on April 24, 1990, filed their Motion To Lift Stay seeking permission to proceed in the Circuit Court of St. Louis County, cause number 587632 on their Petition for Specific Performance.[1]

The Debtors' original Plan did not mention the rejection of any executory contract with the Rubles. However the Debtors' First Amended Plan filed on February 7, 1990 and their Second Amended Plan filed on April 10, 1990 called for the rejection of the Ruble executory contract. The Second Amended Plan provided in part:

1. On December 22, 1988, the Rubles had filed a Petition for Specific Performance in the Circuit Court of the County of St. Louis, Cause Number 587631. The Rubles filed a lis pendens on the property in question on January 3, 1989. Pogue requested and was granted additional time to answer, but failed to answer. In July 1989, the Rubles filed for a default and inquiry. Mrs. Pogue then filed an Answer and Motion to Dismiss which was overruled. On October 2, 1989, the Rubles set the cause on the equity docket for trial and on January 10, 1990 the Rubles amended their Petition to include a count for fraud. When the Pogues filed their Chapter 13 petition in Bankruptcy on January 23, 1990 further proceedings regarding the Petition for Specific Performance were stayed.

"8.e.(X) Other: Debtors reject executory contract for sale of real estate to Leonard and Shelly Ruble."

An Order was issued by this Court on April 24, 1990 confirming the Debtors' Second Amended Chapter 13 Plan.

The initial hearing on Motion For Relief From Stay was held on May 22, 1990 and with the consent of the parties continued to June 6, 1990, at which time testimony was completed. The Court found that Movants' Exhibit No. 1 was a contract between the Debtors and the Movants for the sale of real estate. The Court then directed the parties to submit briefs to determine whether the contract was executory under the facts and circumstances that were presented in this case. Final rebuttal briefs were filed on July 11, 1990.

FACTUAL BACKGROUND

Prior to her marriage to James Pogue, Maureen Pogue was awarded the property located at 16924 Brown Road in Grover, Missouri as part of a property settlement in a November, 1983 divorce from her former husband, Kevin Schreiner. At the time Maureen married James in March of 1986, this property was subject to only one deed of trust held by S.B.A., under which only Maureen was liable. Subsequent to the Debtors' marriage, but prior to October 29, 1987, two more liens were placed against the property for which James was liable. The second and third liens were held by Commercial Credit and Mary Winter, respectively.

On October 29, 1987 Maureen Pogue and Shelly Ruble signed the following document:

"This contract agreement concerning property at 16924 Brown Rd. Grover, Mo. 63040

The said owner Maureen Pogue P.O. Box 172 Grover, Mo. 63040 agrees to sell, to the said buyer Shelly Ruble 17034 Manchester Rd. Grover, Mo. 63040 for the set amount of $75,000.00 (Seventy-five Thousand Dollars). To be paid as follows: $1,000.00 to be paid as of today's date Oct. 29, 1987, an additional $500.00 to be paid Dec. 1, 1987. To be deducted from set amount. Shelly Ru-

ble, agrees to pay $450.00 monthly beginning Jan. 1, 1988 to said owner Maureen Pogue, to be mailed to P.O. Box 172, Grover, Mo., for a period of twelve (12) months, or before if buyer decided to pay the owner the remaining balance of purchase price on said property, at which time the buyer could assume the S.B.A. loan from the owner and pay to the owner the remaining balance of set amount owed to the owner on the property.

At which time there would be an additional $1000.00 deduction from the selling price for repair and remodeling and material used and paid for by the buyer to improve the property, such as remodeling the bathroom, replacing windows, cleaning of carpets, fixing leaking fausts, roof leak, planing down dragging doors, installing duct pipe, repairing electric line to septic tank, and leak in basement ect. Can also pay money at any time to be deducted from original selling price."

The Rubles took possession of the property and moved into the home in January, 1988.

During the first hearing Maureen Pogue denied that she had signed the contract and asserted the exhibit was a forgery. William H. Storer, a recognized handwriting expert, examined the signatures on the "contract agreement" and other documents which Maureen Pogue admitted contained her actual signature. He concluded the same person had signed both the admitted documents and the "contract agreement". Therefore, Maureen Pogue did in fact sign the "contract agreement". After observing Mrs. Pogue's demeanor, listening to her testimony and considering the record as a whole, I do not find her to be a credible witness.

Maureen Pogue insisted that she never intended to sell the property and had actually signed a rental agreement with the Rubles, which had been executed in March, 1989 and thereafter lost. Although she admitted she received the initial $1,000.00 and all of the other required payments, she claims the $1,000.00 was not a down payment, but a security deposit and the subsequent $500.00 paid on December 1 and the

$450.00 monthly payments were for rent. The Rubles took possession of the real property and moved into the home in January, 1988. As per the "contract agreement", the Rubles made the twelve monthly payments of $450.00 up to January 1990. As noted above, the Court finds that Movants' exhibit No. 1 is a contract between the Debtors and the Movants for the sale of real estate.

When the Rubles paid Maureen Pogue the initial $1,000.00, Pogue executed a cash receipt. The $500.00 payment was drawn on a check on the Rubles' personal checking account. Maureen Pogue endorsed the check and cashed it. Pursuant to the contract, Shelly Ruble informed Maureen Pogue that she was going to arrange financing to complete the payment on the house. At that time Pogue stated she no longer wanted to sell the property to her.

On November 9, 1988, the Rubles made a demand on Maureen Pogue to comply with the "contract agreement". The Rubles set the closing for the sale of the property on December 28, 1988. However, Pogue's attorney informed them that Maureen would not appear at the closing. The Rubles appeared at the closing, but Maureen failed to appear.

## DISCUSSION AND ANALYSIS

■ The Bankruptcy Code does not contain a precise definition of the term executory contract. However, this Court has consistently applied the standard set out in Professor Countryman's article, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973), which defines an executory contract as "a contract under which the obligations of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *See, e.g., In re Howard*, 109 B.R. 382, 384 (Bankr.E.D.Mo.1989). In determining the

significance of the remaining obligations under a contract, the Court will look to state law. *See Brown v. First Nat. Bank in Lenox*, 844 F.2d 580, 581 (8th Cir.1988); *In re Speck*, 798 F.2d 279, 280 (8th Cir. 1986). *See also Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("[D]etermination of property rights in assets of a bankrupt's estate left to state law.") In Missouri a contract for deed, also referred to as an installment land sale contract, has traditionally been governed by general principles of contract law. *See Long v. Smith*, 776 S.W.2d 409, 413 (Mo.Ct.App.1989). Although the courts recognize that a contract for deed and a mortgage serve similar economic functions, the purchaser under a contract for deed is not a mortgagor. *Id.* Accordingly, the Court finds that under Missouri law contracts for deed are executory contracts, rather than liens, for purposes of the Bankruptcy Code. *Cf. Brown, supra* (contract for deed executory under Iowa law); *In re Speck, supra* (executory under South Dakota law). In addition, the Court finds that the obligations remaining under the parties' contract for deed are significant and are so far unperformed that the failure of either to complete performance would constitute a material breach. Therefore, the Court holds that the contract for deed entered into between the parties is an executory contract.

■ Subject to the provisions of § 365 of the Code, a Chapter 13 debtor's plan may provide for the assumption, rejection, or assignment of any executory contract not previously rejected. 11 U.S.C. § 1322(b)(7). The Court finds that the Debtor has rejected the parties' executory contract for deed pursuant to the terms of its confirmed Chapter 13 plan. However, the Court also finds that the effect of the Debtor's rejection is limited by § 365(i) [2] which provides

2. Section 365(i) provides:

(i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may

remain in possession of such real property or timeshare interest.

(2) If such purchaser remains in possession—

(A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any dam-

that a purchaser under an executory contract of the debtor for the sale of real property who is in possession may treat the contract as terminated and retain a lien on the property for the recovery of the purchase price paid or, in the alternative, may remain in possession with the right to offset the damages against payments coming due under the contract. 11 U.S.C. § 365(i)(2)(A). When the contract payments are completed, the purchaser is entitled to delivery of title. 11 U.S.C. § 365(i)(2)(B). *See also McCannon v. Marston,* 679 F.2d 13, 18 (3rd Cir.1982); *In re Davis,* 109 B.R. 633, 640 (Bankr.Vt.1989); *In re Smith,* 71 B.R. 754, 758-59 (Bankr. M.D.La.1987). Accordingly, the Court finds that the Rubles' Motion For Relief is moot as relief is available under the Bankruptcy Code. The Court notes that the Rubles have not indicated which option they have elected under § 365(i); therefore, pursuant to the Order to be entered this date, the Court directs the Rubles to advise this Court of their selection.

### ORDER ON MOTION TO OFFSET

### I. JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(O), which the Court may hear and determine.

### II. INTRODUCTION

The Debtors, James and Maureen Pogue, filed this Chapter 13 case on January 23, 1990. On April 24, 1990, the Movants, Leonard and Shelly Ruble, filed their Motion To Lift Stay seeking permission to proceed in the Circuit Court of St. Louis County, Missouri in cause number 587632 on their Petition For Specific Performance.

The Movants' Motion was denied as moot by Order of this Court entered on December 19, 1990. Pursuant to that Order, Movants filed their Notice of election of remedy under 11 U.S.C. § 365(i)(2) indicating that they chose to offset damages accruing after the date of the Debtors' rejection of their contract for deed against payments coming due under that contract. Thereafter, a hearing was conducted on January 17, 1991, where the parties were afforded the opportunity to present evidence regarding the extent of the Rubles' right to offset damages.

Therefore, after an examination of the pleadings and testimony presented in this matter regarding damages, and for the reasons more fully set forth in the Memorandum Opinion entered December 19, 1990,

IT IS HEREBY ORDERED that Movants, Leonard and Shelly Ruble, are entitled to offsets against the original purchase price of $75,000.00 under their contract for deed in the following amounts: $12,750.00 for monies paid under the contract, $1,000.00 for the remodeling allowance provided for under the contract, attorney's fees of $12,065.20, costs totalling $918.70, $1,500.00 paid on the original loan commitment, $4,992.00 in lost earnings, and $9,079.00 representing the interest rate differential incurred because of the Debtors' unwillingness to close. These damages total $42,304.90 and when subtracted from the original purchase price of $75,000.00, the balance due under the contract is in the amount of $32,695.10;

IT IS FURTHER ORDERED that Movants' right of offset is and shall be subject to those deeds of trust, liens and tax obligations of record presently encumbering the real property located at 16924 Brown Road, Grover, Missouri 63040; and

IT IS FURTHER ORDERED that upon the closing of the real estate contract, the

---

ages occurring after the date of the rejection of such contract caused by nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

(B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

Movants shall provide the Debtors, the Debtors' attorney and the Court with an accounting of the interest rate paid on their permanent financing. The Court takes judicial notice of the fact that interest rates offered for single family homes have recently fallen and, accordingly, retains jurisdiction of this matter to adjust the award of damages based upon the *actual* rate of interest paid.