**In re ORION REFINING CORP., Debtor.**

**Michael G. Syracuse d/b/a Interstate Supply Co., and Texas ICO, Inc., Plaintiffs,**

**v.**

**Orion Refining Corp., Defendant.**

**Bankruptcy No. 03–11483 (MFW).
Adversary No. 03–53939.**

United States Bankruptcy Court,
D. Delaware.

April 17, 2006.

319) (March 30, 2004).

Chris Winter, Duane Morris LLP, Wilmington, DE, for Michael Syracuse.

Andrew C. Wilson, Burke & Mayer, New Orleans, LA, for Michael Syracuse.

Edward S. Rapier, Jr., Mandeville, LA, for Michael Syracuse.

Thomas W. Briggs, Morris Nichols Arsht & Tunnell, Wilmington, DE, for Cypress Associates, LLC, ORC Distribution Trust Representative.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the motion for partial summary judgment filed by Michael G. Syracuse ("Syracuse") seeking a determination that he has title to certain surplus materials located at the former facility of Orion Refining Corporation (the "Debtor") in Norco, Louisiana. The Debtor filed a cross-motion for partial summary judgment asserting that title to the surplus materials passed to the purchaser of its Norco facility, Valero Energy Corporation and Valero Refining–New Orleans, LLC (collectively "Valero"). For the reasons stated herein, the Court will deny Syracuse's motion and grant the Debtor's motion.

## I. BACKGROUND

The Debtor operated a crude oil refinery in Norco, Louisiana. On April 24, 2001, Syracuse and the Debtor entered into an agreement ("the Agreement") whereby Syracuse agreed to clean designated areas and remove surplus materials from the Norco facility. The Agreement is governed by Louisiana law. Section II of the Agreement, entitled "Scope of Work" provides:

A. Contractor shall furnish all . . . personnel to remove surplus material as identified by Orion . . . and clean all designated areas . . . . Completion of areas is defined as: graded and able to cut grass without obstruction. . . . Work or services rendered or performed by Contractor shall be done with due diligence . . . .

(Compl., Ex. A).

In addition to providing clean-up services, Syracuse was purchasing surplus materials located in the designated areas. In fact, the Debtor was not obligated to pay Syracuse any money for his services; instead, Syracuse paid the Debtor $100,000. Section VII of the Agreement, entitled "Special Conditions," provides:

WARRANTY AND WARRANTY DISCLAIMER–FOR CONTRACTOR USE ONLY Seller warrants only that [it] has good title to the "used" and "as is" surplus material sold hereunder. Buyer understands and agrees that Seller is

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

selling hereunder "used" and "as is" surplus material. . . .

(*Id.*).

Pursuant to the Agreement, Syracuse removed some surplus materials from the Norco facility which it resold. Under the Agreement, Syracuse had until March 31, 2002, to complete his performance, which was not done. Syracuse blames his failure to meet the deadline on the Debtor's interference with his performance. Syracuse contends that, pursuant to the Agreement with the Debtor, he obtained title to $1,591,000 worth of surplus materials that were still located at the Debtor's facility when it filed its bankruptcy case on March 13, 2003.

Shortly after the bankruptcy filing, the Debtor sold all the assets of the Norco facility to Valero. Syracuse objected to the sale to the extent that it included the surplus material that he claimed he owned. The parties agreed to allow the sale to proceed, subject to the Debtor placing $1.5 million of the sale proceeds in escrow pending a determination of title to the surplus materials.

Briefing on the parties' motions for partial summary judgement is complete and they are ripe for decision.

## II. *JURISDICTION*

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (N), & (O).

## III. *DISCUSSION*

### A. *Standard of Review*

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056; *Celotex v. Catrett,* 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe,* 79 F.3d 1285, 1291 (2d Cir.1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

### B. *Title*

Syracuse argues that the Agreement was a contract of sale. Consequently, he

asserts that title to the surplus materials passed to him at the time of execution. As a result, he contends that the items were not property of the Debtor's bankruptcy estate and could not be sold to Valero.

The Debtor argues that the Agreement was for services. Consequently, the Debtor contends that it retained title to surplus materials that were not timely removed by Syracuse.

"The means for distinguishing between contracts of sale and construction agreements have been disputed and have never been very clear." *Bruce V. Schewe, Obligations,* 46 La. L.Rev. 595, 609 (1986). In this case, however, it is not necessary to classify the Agreement between the Debtor and Syracuse as one for services or one of sale, because even if classified as a contract of sale, it was a contract subject to a suspensive condition that—until fulfilled—prevented title to the surplus materials from passing to Syracuse.

■ Under the Louisiana law of sales, title to an object normally passes to the purchaser when the parties reach an agreement as to the thing and the price, even though no delivery has occurred. La. Civ.Code art. 2456 ("Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid."). Numerous exceptions to this general rule exist, one of which is a sale subject to a suspensive condition. *See* Robert L. Theroit, *An Examination of the Role of Delivery in the Transfer of Ownership and Risk in Sales under Louisiana Law,* 60 Tul. L.Rev. 1035, 1037 (1986) (explaining exceptions to Civil Code article 2456). The Civil Code defines a "suspensive condition" as a conditional obligation that "may not be enforced until the uncertain event occurs." La. Civ.Code art. 1767.

■ When a contract of sale also requires the performance of a service, the performance of that service is a suspensive condition that is required to be fulfilled before title can pass under the contract of sale. *See, e.g., Jefferson Parish School Bd. v. Rowley Co.,* 350 So.2d 187, 192–93 (La.App. 4th Cir.1977) (holding that even though the purchaser took delivery and paid for cabinets which were later destroyed by fire, title did not pass on the date of the contract, payment, or delivery because the contract also required the installation of those cabinets, which was an unfulfilled suspensive condition at the time they were destroyed).

■ In this case, Syracuse states that he paid the Debtor $100,000 to purchase the surplus materials in the designated areas of the Debtor's former Norco facility. The Agreement, however, also required him to remove the materials and clean those areas. The fact that Syracuse claims the value of the remaining items at the Norco facility is $1,591,000 is evidence of the value the Debtor placed on his clean-up services.

The Court concludes that Syracuse's performance of his clean-up services was a suspensive condition to his obtaining title to the surplus materials in the designated areas. *Rowley Co.,* 350 So.2d at 192–93. Until Syracuse removed an item from a designated area and cleaned that area, title to that item did not pass from the Debtor to Syracuse. Consequently, the Court finds that title to the items remaining at the Debtor's facility had not passed to Syracuse at the time of the Debtor's bankruptcy filing.

Syracuse argues that the clean-up services he was to preform could not be a suspensive condition to the sale because "the services of cleaning up *after* the Surplus Materials were removed could only be

performed *after* the Surplus Materials were removed." (Emphasis in original).

The Court does not agree. Removal of the surplus materials could not be accomplished unless Syracuse was also concomitantly cleaning up the designated areas. Without the satisfaction of the suspensive condition—the clean up of the designated areas—title to the Surplus Materials could not have passed to him from the Debtor.

### C. Seller's Fault

■ Syracuse argues that, even if the Agreement is deemed to be a sale subject to a suspensive condition, the Debtor is to blame for his failure to satisfy the condition because the Debtor interfered with his performance. In support, Syracuse submitted several deposition transcripts describing the restrictions placed on Syracuse in working in certain areas and the affidavit of the Debtor's former security manager, who stated that Syracuse's crew was "called off areas where they were performing work and redirected to other areas."

The Debtor contests Syracuse's allegation that it interfered with his performance and argues that the Agreement gave the Debtor the right to restrict his access to certain areas. In support, the Debtor submitted the deposition of an employee of the Debtor who testified that he gave Syracuse "the opportunity to cherry pick based on ... areas[, but] he was not able to give [Syracuse] just free range of the plant."

Based on the exhibits attached to the motions for summary judgment, the Court concludes that a genuine issue of fact exists over whether the Debtor interfered with Syracuse's performance of the Agreement.

That factual issue, however, is not material to the legal issue before the Court. Even assuming that the Debtor was to blame for Syracuse's nonfulfillment of the suspensive condition, Syracuse cannot establish his title to the surplus materials over the interests of Valero.

■ It is true that Louisiana law provides that, if a party is unable to perform a suspensive condition because the other party interfered, the condition will be deemed fulfilled. La. Civ.Code art. 1772 ("A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment."). Further, the condition will be deemed fulfilled retroactively to the date of the agreement. *Id.* at art. 1775 (the effect is "retroactive to the inception of the obligation.").

■ There is an exception, however: "fulfillment of the condition does not impair the right acquired by third persons while the condition was pending." *Id.* at art. 1775. *See also id.* at art. 1772, cmt. (c) (explaining that even when a suspensive condition is regarded as fulfilled, "the party not at fault may have to content himself with damages rather than specific performance if the latter has become impossible because of the nonfulfillment of the condition."); *id.* at art. 1775, cmt. (b) (stating that article 1775 protects "the rights of third persons against retroactive effects of the fulfillment of a condition.").

The Louisiana Supreme Court has explained that:

[A] conditional contract is retrospective in its operation as a binding executory contract as of the date it was made and, when the conditions on which the contract is dependent are fulfilled, either party thereto has the right to demand its performance. There is nothing in the language of the Article which lends support to the contention that, when the suspensive conditions are performed, title to the property contracted for vests retrospectively in the grantee to the date the engagement was contracted.

*Wampler v. Wampler,* 239 La. 315, 118 So.2d 423, 426 (1960). *See also Ober v. Williams,* 213 La. 568, 35 So.2d 219, 223 (1948) (explaining that article 1775 does not have the effect of vesting title retrospectively to the date of the agreement; rather, it merely means that "the rights of the obligor, upon compliance, revert to the date of the contract ... it offers no foundation for an argument that ... the ownership is transferred retrospectively by the performance of the condition.").

Consequently, the Court concludes that under Louisiana law, even if the suspensive condition is regarded as fulfilled because of the Debtor's interference with the performance of the Agreement, Syracuse's title would not revert back to the inception of the Agreement and the rights of intervening parties would be protected. La. Civ.Code art 1775 ("[F]ulfillment of the condition does not impair the right acquired by third persons while the condition was pending."). *See also Orion Ref. Corp. v. Dep't of Revenue (In re Orion Ref. Corp.),* No. 03–11483, 2005 WL 994575 at *3 (Bankr.M.D.La. April 27, 2005) (holding that the transfer of tax credits by TARC to Orion was effective notwithstanding a prior letter agreement assigning those tax credits to the Louisiana Department of Revenue because the letter agreement had two suspensive conditions that were not fulfilled at the time TARC transferred the tax credits to Orion); *Energy Development Corp. v. St. Martin,* 128 F.Supp.2d 368, 381 (E.D.La.2000) (holding that a conditional future obligation does not burden property such that it is to be taken out of commerce and the condition does not deny rights acquired by third parties while the condition is pending), *aff'd,* 296 F.3d 356 (5th Cir.2002).

When the Debtor filed its bankruptcy case, the estate obtained an interest in the surplus materials. *See* 11 U.S.C. § 541(a)(1). This occurred before the suspensive condition could be regarded as fulfilled. Also, the Debtor sold its interest in the surplus materials to Valero before the suspensive condition was fulfilled. Therefore, the Court concludes that Syracuse cannot now establish title to the surplus materials, but is relegated to an action for damages only.

**IV. CONCLUSION**

The Court will deny Syracuse's motion for partial summary judgment and grant the Debtor's motion for partial summary judgment on the issue of title. The Court will, therefore, dismiss Count I of Syracuse's adversary complaint, which seeks a declaratory judgment recognizing his right, title, and interest in the surplus materials. In addition, the Court will order the release of the sale proceeds from escrow to the Debtor.