### In re ORION REFINING CORP., Debtor.

**Michael G. Syracuse d/b/a Interstate Supply Co., and Texas ICO, Inc., Plaintiffs,**

v.

**Orion Refining Corp., Defendant.**

Bankruptcy No. 03–11483 (MFW).
Adversary No. 03–53939.

United States Bankruptcy Court,
D. Delaware.

Nov. 20, 2008.

Christopher M. Winter, Michael R. Lastowski, Duane Morris LLP, Wilmington, DE, Andrew C. Wilson, Thomas R. Blum, Susan M. Caruso, Simon, Peragine, Smith & Redfearn, LLP, New Orleans, LA, Edward S. Rapier, Jr., Mandeville, LA, for Michael Syracuse.

Richard D. Allen, Gregory W. Werkheiser, Thomas W. Briggs, Jr., Morris Nichols Arsht & Tunnell, Wilmington, DE, for Cypress Associates, LLC, ORC Distribution Trust Representative.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Michael G. Syracuse ("Syracuse") for Partial Summary Judgment dismissing the counterclaims filed by Orion Refining Corporation ("Orion") in the above adversary. Orion opposes the Motion. In addition, the

Court has before it Syracuse's Motion to Reconsider the Court's Order allowing Orion to supplement its opposition to the summary judgment motion. For the reasons stated below, the Court will deny Syracuse's Motion to Reconsider and Syracuse's Motion for Partial Summary Judgment.

## I. BACKGROUND

Orion operated a crude oil refinery in Norco, Louisiana. On April 24, 2001, Syracuse and Orion entered into an agreement (the "Agreement") whereby Syracuse agreed to clean designated areas of the Norco facility. In addition to providing clean-up services, Syracuse purchased and agreed to remove surplus materials (the "Surplus Materials") located in the designated areas. Syracuse paid Orion $100,000 and was paid nothing for the clean-up services.

After executing the Agreement, Syracuse removed some of the Surplus Materials from the Norco facility which it resold for approximately $800,000. Under the Agreement, Syracuse had until March 31, 2002, to complete his performance, but did not complete the work by that date. Syracuse states he failed to meet the deadline because Orion interfered with his performance. Syracuse contends that, pursuant to the Agreement with Orion, he had title to the Surplus Materials that remained at Orion's facility at the time Orion filed its bankruptcy case on March 13, 2003.

Shortly after the bankruptcy filing, Orion sold all the assets of the Norco facility to Valero Energy Corporation and Valero Refining–New Orleans, LLC (collectively "Valero"). Syracuse objected to that sale to the extent it included the Surplus Materials that he claimed he owned. The par-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

ties agreed to allow the sale to proceed, subject to Orion placing $1.5 million of the sale proceeds in escrow pending a determination of Syracuse's claim.

On June 19, 2003, prior to entry of the Sale Order, Syracuse filed a complaint against Orion seeking (1) a declaratory judgment that he had title to the Surplus Materials which had a value as of the date of the sale to Valero in excess of $1.5 million, (2) damages for breach of contract, conversion, fraud, tortious interference with contract, unfair business practices, and (3) indemnification or contribution for claims made against Syracuse by a subcontractor. Orion filed an answer, affirmative defenses, and counterclaims denying that Syracuse had title to the Surplus Materials and contending that (1) Orion had fully performed the Agreement, (2) Syracuse had breached the Agreement, and (3) Syracuse had waived his claim. Syracuse filed an answer with affirmative defenses to Orion's counterclaims asserting that (1) if Syracuse had not fully performed the Agreement, it was because Orion had wrongfully restricted his access to the premises, (2) Orion had waived its claims, (3) Orion had failed to mitigate its damages, and (4) Orion had breached or anticipatorily breached the Agreement.

On September 1, 2004, Syracuse filed a motion for partial summary judgment seeking a determination that the Surplus Materials were in fact still on the premises as of the date of the sale to Valero. Orion did not oppose that motion, and the Court granted it by order dated July 15, 2005.

Syracuse thereafter filed a second motion for partial summary judgment seeking a determination that he had title to the Surplus Materials that remained at the Norco facility at the time of Orion's bankruptcy filing. Orion filed a cross-motion for partial summary judgment on the same issue. The motion was fully briefed.

On April 17, 2006, the Court issued a decision denying Syracuse's motion and granting Orion's cross motion. *Syracuse v. Orion Ref. Corp. (In re Orion Ref. Corp.)*, 341 B.R. 470 (Bankr.D.Del.2006). The Court concluded that under Louisiana law[2] the Agreement between the parties was a contract subject to a suspensive condition (clean up of the premises) and that, because the condition was not satisfied, Syracuse had not obtained title to the Surplus Materials. *Id.* at 474. Subsequently, the Court denied Syracuse's motion for reconsideration of that decision. *Syracuse v. Orion Ref. Corp. (In re Orion Ref. Corp.)*, No. 03–53939, 2006 WL 2270341, at *7 (Bankr.D.Del. Aug.8, 2006). Syracuse appealed.

On April 9, 2008, the District Court reversed, concluding that title had passed to Syracuse at the time the Agreement was executed and that, as a result, he was entitled to the $1.5 million in escrow. *Syracuse v. Orion Ref. Corp.*, No. 06–536–SLR, 2008 WL 975071, at *3 (D.Del. Apr.9, 2008). The District Court remanded for further proceedings consistent with its decision and to ensure that the facts upon which it based its decision were "truly not in dispute." *Id.* at *3. On May 21, 2008, in response to the parties' request for reconsideration, the District Court amended its decision. The Court clarified that it was not determining that Syracuse was entitled to the escrowed funds but only that title to the Surplus Materials had passed at the time of execution of the Agreement. The Court remanded the issue of the value of the Surplus Materials and, consequently, the amount Syracuse was entitled to receive from the escrowed funds.

2. The Agreement is governed by Louisiana law.

On May 2 2008, the Court held a status conference to determine how to proceed on remand. At that hearing, the Court directed the parties to file a joint pre-trial statement identifying any facts relied upon by the District Court which they contend are disputed. The statement was filed on May 29, 2008. (Adv.D.I.139.) Syracuse asserted that there are no disputed facts relevant to the issue of title decided by the District Court. Syracuse requested that trial proceed on the only issue remaining for decision, the amount of damages he suffered. Orion, in contrast, identified numerous facts which it contended are in dispute. Orion further asserted that it had the right to prove its affirmative defenses and counterclaims which did not relate to the issue of title to the Surplus Materials decided by the District Court.

On June 2, 2008, the Court held another status conference. At that hearing, the parties agreed that Syracuse would file a further motion for partial summary judgment to address these issues. That motion was filed by Syracuse on July 9, 2008, and seeks dismissal of Orion's counterclaims and a determination that the only issue left for trial is the amount of damages due to Syracuse. Orion responded on August 6, 2008. Syracuse filed its reply on August 19, 2008. On September 25, 2008, Orion filed a motion to supplement its response. The Court granted the motion to supplement on September 29, 2008. On that same day, Syracuse filed an objection to the motion to supplement. Thereafter, on October 2, 2008, Syracuse filed a motion for reconsideration of the Order granting the motion to supplement. Orion filed an opposition to the reconsideration motion on October 16, 2008.

The parties have fully briefed the motion for partial summary judgment and the mo-tion for reconsideration. The motions are ripe for decision.

## II. JURISDICTION

The Court has jurisdiction over this adversary proceeding, which is core, pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (N), & (O) (2006).

## III. DISCUSSION

### A. Syracuse's Motion for Reconsideration

Orion's motion to supplement its response to the motion for partial summary judgment asked the Court to consider the affidavit of Linda Porrazzo and certain documents identified as Orion's business records which support an accompanying spreadsheet (the "Documents"). The Documents purportedly detail the costs (in excess of $130,000) incurred by Orion in cleaning the areas which Syracuse was supposed to have cleaned under the Agreement.

Syracuse objects to the Court's consideration of the Documents on three grounds: (1) they are irrelevant to the issues before the Court; (2) they are untimely; and (3) they are hearsay.

### 1. Irrelevant

█ Syracuse argues that the Documents are irrelevant because they show costs incurred by Orion in connection with the clean up of the premises after Syracuse left the premises. Syracuse notes that, in its discovery responses, Orion stated that the only damages incurred by it as a result of Syracuse's breach of the Agreement were the amount by which Valero would have reduced the purchase price for the Norco plant because of costs Valero incurred in cleaning up the site.[3] Syracuse contends that Orion has produced no evi-

3. In its response to Syracuse's discovery requests, Orion stated:

dence that the Documents which purport to show costs incurred by Orion in cleaning the site had any relationship to the price paid by Valero for the Refinery. Orion responds that the Documents are relevant and material to its counterclaim that Syracuse breached the Agreement, causing Orion damages.

The Court agrees with Orion that the Documents are relevant. To the extent that the Documents purport to show that Orion incurred out of pocket expenses in performing work that Syracuse was required to perform under the Agreement, then they are relevant to damages that Orion may assert for breach of that contract.

### 2. *Untimely*

■ Syracuse asserts, however, that the Documents are untimely because they have been produced, for the first time, five years after this litigation was commenced and four years after Orion agreed to file supplemental responses to Syracuse's discovery requests which sought all documents and facts relevant to Orion's damages. In fact, Syracuse contends that Orion is barred from introducing the Documents by a prior decision of the Court on Syracuse's motion to compel. A teleconference on Syracuse's motion to compel was held on October 21, 2004, before Judge Case who was handling this adversary proceeding at the time. During that teleconference, Judge Case stated that "certainly Orion would be precluded from using or introducing any other documents that would be responsive to [Syracuse's] previous discovery request beyond what

has already been produced." (10/21/04 Tr. at 9.) In that conference, however, Orion stated that it would supplement its discovery responses on the issue of its damages for Syracuse's alleged breach of contract, which the Court permitted. Those responses were to include all "documents underlying whatever ... Orion's counterclaim was[,] together with any documents [Orion had] that relate to the damages arising out of that counter-claim." (*Id.* at 12–14.) Syracuse complains that the Documents were never produced in Orion's supplemental responses to discovery and, therefore, are untimely.

The Court rejects Syracuse's argument. Although Judge Case suggested during the hearing on Syracuse's motion to compel that any documents not produced by Orion would be precluded, his actual ruling permitted Orion to supplement its discovery responses. Since that time, the parties have concentrated on Syracuse's motion for partial summary judgment (filed on September 1, 2004, shortly before the October 21, 2004, teleconference). That motion for summary judgment dealt exclusively with the issue of when title to the Surplus Materials passed, not Orion's counterclaims. The latter issue is only now ripe for decision as a result of the District Court's remand. The Court concludes, therefore, that Orion is not barred from offering any more Documents in support of its counterclaims and affirmative defenses.[4]

### 3. *Hearsay*

■ Syracuse contends, nonetheless, that the Documents are inadmissible as

---

As a result of Syracuse's failure to complete its obligation under the contract with Orion and remove the Surplus Material, Orion was damaged in an amount not less than $209,000.00. This amount represents at least a portion of the cost associated with removing the material, an amount by which

the purchase price paid by Valero for the Refinery *would have been reduced.*
(Orion's Supplemental Response to First Set of Interrogatories No. 18 dated December 22, 2004 (emphasis added).)

**4.** To the extent additional discovery is necessary as a result of this decision, the Court

hearsay. He argues that the affidavit does not comply with Rule 803(6) of the Federal Rules of Evidence.[5] Specifically, Syracuse contends that the affidavit does not explain how the spreadsheet was prepared, when it was generated, or even what it represents. Syracuse also argues that Ms. Porrazzo does not state that she (or someone she supervises) prepared the spreadsheet or that it was prepared by someone who had knowledge of its subject matter.

The Court rejects Syracuse's argument. The declarant does state that she is Orion's custodian of records and that the Documents are business records. The Court concludes that this is sufficient to permit it to consider the Documents in the context of the motion for partial summary judgment.[6] Fed.R.Evid. 803(6). *See also, United States v. Pelullo*, 964 F.2d 193, 200 (3d Cir.1992); *United States v. Furst*, 886 F.2d 558, 571 (3d Cir.1989).

Consequently, the Court will not reconsider its prior ruling granting Orion's motion for leave to supplement its opposition to Syracuse's motion for partial summary judgment.

### B. *Syracuse's Motion for Partial Summary Judgment*

#### 1. *Standard of Review*

The Court should grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), incorporated by Fed. R. Bankr.P. 7056. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Michaels v. New Jersey*, 222 F.3d 118, 121 (3d Cir.2000); *Robeson Indus. Corp. v. Hartford Accident & Indem. Co.*, 178 F.3d 160, 164 (3d Cir.1999). The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Group, Inc.)*, 377 B.R. 471, 475 (Bankr.D.Del.2007). A fact is material when it could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995); *Lony v. E.I. du Pont de Nemours & Co.*, 821 F.Supp. 956, 959 (D.Del.1993).

Once the movant has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not

directs the parties to consult and submit a joint scheduling order.

**5.** Rule 803 states in relevant part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) Records of Regularly Conducted Activity.—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the custodian or other qualified witness.... Fed.R.Evid. 803(6).

**6.** The Court is not required at this stage to decide the merits of Orion's counterclaims, but only to decide whether there is a genuine issue of material fact. *See* Part B1, *infra*.

rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348 (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper."). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

### 2. *Remaining Issues for Trial*

Syracuse asserts that the Sale Order required that he prove only three facts to prevail: (1) he had title to the Surplus Materials, (2) the Surplus Materials were present at the time of the sale to Valero, and (3) the value of the Surplus Materials at that time.[7] Syracuse asserts that the District Court decided the first fact (title) and this Court determined the second fact (presence of the Surplus Material at the time of sale) when his first motion for partial summary judgment was granted on July 15, 2005. Therefore, Syracuse contends that the only issue left for trial is the value of the Surplus Materials sold to Valero (and, thus, the amount of damages to which he is entitled). He seeks a trial on this issue alone.

Orion disagrees, noting that the Sale Order expressly preserved all of Orion's "rights, claims, defenses or counterclaims" and that "nothing in [the Order] shall be deemed an admission as to the validity, priority or enforceability of any claim asserted by Syracuse." (D.I. # 336, Sale Order dated June 26, 2003, ¶ 57(d).) Orion, therefore, contends that its affirmative defenses and counterclaims remain to be decided.

■ The Court agrees with Orion that the Sale Order preserved Orion's defenses and counterclaims to Syracuse's claim.

#### a. *Breach of Contract*

■ The core of Orion's affirmative defenses (and counterclaims) is that Syracuse cannot recover on his claim because he breached the Agreement while Orion fully performed. Orion asserts that neither the Bankruptcy Court nor the District Court decided this issue because the matter before them was limited to the issue of

---

7. The Sale Order stated in relevant part that: In the event of a determination by a final order of this Court or another court of competent jurisdiction that: (i) [Syracuse] owned some or all of the Surplus Materials at the time of the Sale and some or all of the Surplus Materials did not become property of [Orion's] bankruptcy estate pursuant to section 541 of the Bankruptcy Code upon the commencement of [Orion's] bankruptcy case; and (ii) that some or all of the Surplus Materials were transferred to the Purchaser pursuant to the terms of this Order, then [Syracuse's] ownership Interest in such Surplus Materials shall be deemed to have attached to the Escrow Amount in an amount to be determined by the Court. (D.I. # 336, Sale Order dated June 26, 2003, ¶ 57(a).)

whether (and when) title passed to Syracuse.

Syracuse argues that summary judgement must be granted to him on the breach of contract claim because Orion has not articulated any damages suffered by it. Syracuse contends that Orion's defenses and counterclaims cannot be pursued because, as a result of the Sale Order, Orion sold all of its assets and therefore has no damages that it can assert. Syracuse contends that although Orion produced evidence that Valero incurred $209,000 in cleaning the premises, Orion was responsible for those costs (testing, decontamination and disposal) under the Agreement. (*See* Collins Dep. 140:17–141:1.) Therefore, Syracuse argues that Orion has incurred no damages and has no cause of action. *See, e.g., Bourdette v. Sieward,* 107 La. 258, 31 So. 630, 634 (1902) (remote and speculative damages cannot be recovered).

Even if Orion had any damages, though, Syracuse contends that they must be limited to the amount by which Valero reduced its purchase price because that is the only damage to which Orion referred in responding to Syracuse's discovery requests.

Orion responds that it has suffered damages. It contends that Syracuse has admitted that Syracuse (not Orion) was responsible for the costs of removal and clean-up. (*See* Syracuse Dep. 54:20–56:22, 120:19–122:25, 161:17–166:3; Agreement § II.A.) Orion asserts that Valero incurred costs for doing the work that Syracuse should have done for which Valero filed a proof of claim against Orion. (*See* Collins Dep. 132:21–138:8, 139:18–141:20; Exhibit I to Orion's Opposition to Plaintiff's Motion for Partial Summary Judgment.) Further, in its supplemental response, Orion attaches the Documents which purport to show costs that Orion directly incurred in cleaning the facility, which Syracuse was obligated to do under the Agreement. Consequently, Orion argues that it suffered damages which it should be able to establish at trial.

The Court finds that there is a genuine issue of material fact regarding what damages, if any, Orion suffered as a result of a breach of the Agreement, if any, by Syracuse. Therefore, the Court cannot grant summary judgment to Syracuse on this aspect of Orion's affirmative defenses and counterclaims.

### b. *Title*

Orion contends that, although the District Court held that Syracuse had title to the Surplus Materials at the time the bankruptcy case was filed, that decision was premised on facts that are still in dispute. Syracuse disagrees and contends that Orion is seeking to re-litigate the issue of title, which has already been finally determined by the District Court and is the law of the case.

The Court agrees with Syracuse. The District Court unequivocally determined that title passed to Syracuse upon the execution of the Agreement, which happened before Orion filed its bankruptcy petition. Although the District Court remanded to this Court to determine if any of the facts on which that decision was premised were disputed, the Court finds that no fact relevant to the District Court's decision is in dispute.

The "disputed" facts to which Orion refers are largely facts contained in the background section of the District Court's decision and are not at all relevant to its conclusion that title passed to Syracuse on execution of the Agreement. For example, Orion disputes Fact Nos. 4, 6, 11, 12 and 13 because Orion asserts that Syracuse never fully performed the Agreement. (*See* Joint Pre-trial Statement, Adv. D.I.

139.) However, the District Court did not make any finding that Syracuse fully performed the Agreement. (2008 WL 975071 at *1–2.) Further, Syracuse's performance of the Agreement was irrelevant to the District Court's conclusion that title passed on execution of the Agreement, rather than on performance of the Agreement.[8]

The other "disputed" facts are similarly irrelevant to the District Court's conclusion that title passed to Syracuse on execution of the Agreement: Disputed Fact No. 5 (that Syracuse paid Orion $100,000); Disputed Fact No. 10 (that some of the Surplus Material was large but that Syracuse had equipment to cut it up); Disputed Fact No. 11 (that some of the buyers were responsible for removing the Surplus Material); Disputed Fact No. 12 (that Syracuse completed 40% of the project); Disputed Fact No. 13 (that there was some concern that Syracuse was selling the large items first); Disputed Fact No. 18 (that Orion paid nothing for the clean-up services); Disputed Fact Nos. 19 & 23 (that Orion drafted the Agreement); Disputed Fact No. 21 (that clean-up could not be completed until the removal of the Surplus Materials); Disputed Fact No. 22 (that the language of the Agreement was vague).

Further, many of the facts are not actually disputed by Orion, but it simply seeks to elaborate on them. For example, Orion asserts that the $100,000 "paid" by Syracuse was not all paid in cash, but partially in credits. (Disputed Fact No. 5.) Orion also asserts that the testimony was that between 30 and 40% of the work was completed by Syracuse. (Disputed Fact No. 12.) Orion contends that there was a lot of concern (versus "some concern") that

Syracuse was not performing. (Disputed Fact No. 13.) Orion disputes the District Court's finding that Syracuse was locked out of the facility on March 13, 2003, not because he wasn't but because Orion contends the lockout was lawful. (Disputed Fact No. 14.) Finally, Orion disputes the District Court's finding that Orion did not give any consideration under the Agreement by giving up the right to the Surplus Materials; Orion contends that the consideration under the Agreement was the services performed by Syracuse. (Disputed Fact No. 19.)

These facts are not relevant to the District Court's decision on title. The Court, however, will permit the parties to present evidence with respect to these disputed facts to the extent they are relevant to the amount of damages suffered by Syracuse as a result of the sale of the Surplus Materials owned by it or relevant to Orion's counterclaims.

## IV. CONCLUSION

For the above-stated reasons, the Court will deny Syracuse's Motion for Reconsideration and Motion for Partial Summary Judgment.

An appropriate Order is attached.

### ORDER

**AND NOW**, this **20th** day of **NOVEMBER, 2008**, upon consideration of the Motions for Partial Summary Judgment and for Reconsideration filed by Michael G. Syracuse and Orion's response thereto, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion by Syracuse to reconsider the Court's Order allow-

---

8. Similarly, in addressing the title issue, this Court concluded that it was not necessary to decide whether Syracuse had performed or Orion had precluded Syracuse from performing. 341 B.R. at 475.

ing Orion to supplement its opposition to the summary judgment motion is **DENIED;** and it is further

**ORDERED** that the Motion for Partial Summary Judgment filed by Michael G. Syracuse is **DENIED.**